# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISON

ZEN SEIFU

      Plaintiff,

        v.

POSTMASTER GENERAL,
U.S. POSTAL SERVICE,

      Defendant.

Case No: 1:19-cv-572

Bowman, M.J.

## MEMORANDUM OPINION AND ORDER

Ostensibly proceeding pro se[1] and *in forma pauperis*, Plaintiff Zen Seifu initiated this action against her employer, the U.S. Postal Service.  The parties have consented to disposition by the undersigned magistrate judge.  *See* 28 U.S.C. § 636(c); (Doc. 14). Currently pending before the Court is Plaintiff's amended motion to extend discovery, to compel additional discovery from Defendant, and request for sanctions (Doc. 57), Defendant's counter-motion for discovery sanctions (Doc. 61), and Defendant's motion for summary judgment.  (Doc. 69).  For the reasons discussed below, Plaintiff's motion will be GRANTED in part and Defendant's motion for sanctions will be DENIED in this Order.  By separate Order filed this same day, Defendant's motion for summary judgment

---

[1] The record reflects that Plaintiff retained counsel, Edward J. Felson, for both her prior 2016 and 2018 EEO proceedings, although Donyetta Bailey briefly represented Plaintiff at the outset of her 2018 EEO proceeding before Mr. Felson resumed his representation.  Attorney Felson also appeared on Plaintiff's behalf at her deposition in this case, (*see* Doc. 45 at 62, stating he was entering his appearance "[f]or the purpose of this deposition"), notwithstanding that no formal Notice of Appearance has been filed of record. At her deposition, Plaintiff testified that she did not prepare the complaint alone but "received assistance from an attorney, an attorney friend" (other than Mr. Felson).  (Doc. 45 at 51). For purposes of the pending motion, the undersigned has reviewed the pleadings under the standards applicable to pro se litigants. *But see Kelly v. First Data Corp.*, 2020 WL 419440 at 13 (S.D. Ohio Jan. 17, 2020) (declining to afford a complaint that had been "ghostwritten" by non-appearing counsel the same degree of liberality ordinarily afforded to pro se pleadings).

will be GRANTED in part without prejudice to re-file a new motion following a short period of reopened discovery.

## I.  Background

This suit seeks redress for claims previously asserted in Plaintiff's 2018 EEO complaint against the U.S. Postal Service.  Plaintiff also filed an earlier 2016 EEO complaint against her employer.  However, Plaintiff did not appeal the EEO Administrative Judge's adverse ruling on the 2016 EEO complaint; therefore, the subject matter of the 2016 EEO complaint is administratively res judicata and not part of this case.

Within the scope of the 2018 EEO complaint and in this case, Plaintiff has alleged that Defendant discriminated against her based upon her race, color, national origin and/or sex, and retaliated against her based upon prior EEO activity, when Defendant took the following adverse actions against her:  (1) Defendant failed to promote her on multiple occasions between January 2016 and January 2018, including but not limited to the assignment of temporary promotional appointments known as "details"; (2) Defendant repeatedly disciplined and ultimately terminated her;[2] and (3) Defendant inadequately investigated an alleged assault by a co-worker in January 2018.

In its 2018 EEO proceeding, the Agency more particularly described the claims initially accepted for review as follows:

> 1.  In November and December 2017, Plaintiff was denied details and/or promotions;[3]
>
> 2.  On January 5, 2018, she was injured after being assaulted at work;

---

[2]The record reflects that Plaintiff was rehired without backpay pursuant to the resolution of a grievance. (Doc. 70-35).

[3]Although the denial of "details" and the denial of "promotions" are listed as separate claims in the 2018 EEO Report of Investigation, the record reflects that a "detail" is a type of *temporary* promotion, such that Plaintiff's federal claim that she was denied a detail is legally equivalent to a failure-to-promote claim.  (*See*, *generally*, EEO report, Doc. 70-8 at 7).

3.      On January 22, 2018, she received a Letter of Warning dated January 16, 2018;

4.      On July 22, 2018, she was instructed via letter to report for an Investigative Interview and on July 22, 2018, and subsequently, on August 17, 2018, she was issued a Notice of Suspension of 7 Days; and

5.      On September 7, 2018. She was scheduled for a Pre-Disciplinary Interview.

(Doc. 69-5 at 17, Investigative Summary).

Over the ensuing year, Plaintiff amended her 2018 EEO complaint, resulting in the following additional claims:

1.   In January 2016, August 2016, December 2016, February 2017, August 2017, and September 2017, she was also denied details;

2.   After the January 5, 2018 alleged assault, management failed to take appropriate actions including an investigation;

3.   In April 3, 2019, Plant Manager Glancy issued a Notice of Separation – Non-Disciplinary, separating Plaintiff from her employment effective April 30, 2019 due to her "inability to perform the essential functions of your position," based upon her absence from work for more than a year.

(Doc. 69-7).   Eventually, Plaintiff was separated from her employment pursuant to the April letter, and that claim also is deemed within the scope of this lawsuit.  Plaintiff filed this lawsuit before any final resolution of her 2018 EEO Complaint, after that complaint had been pending for more than 180 days.[4]

Discovery on Plaintiff's claims was initially set to conclude on April 1, 2020, but was extended through October 30, 2020.  (Doc. 51).  Plaintiff filed the pending "amended"

---

[4]Presumably in part because of continuing amendments, the assigned EEO Administrative Judge did not issue a final decision within 180 days of the *filing date* of the 2018 EEO complaint.  Instead, the EEO judge dismissed the entire 2018 EEO complaint after Plaintiff filed the instant federal lawsuit on July 18, 2019, implying (mistakenly) that all claims presented in the 2018 EEO complaint had been pending for more than 180 days.  (Doc. 52 at 3; *see also* Doc. 69-8).

discovery motion shortly before the close of discovery, on October 7, 2020.  Through the same counsel who had represented Defendant from the outset of this case, Defendant responded to Plaintiff's motion on October 15, 2020.  On October 16, 2020, Defendant filed a Notice of Substitution of Counsel.  Two weeks later on November 2, 2020, new defense counsel filed a counter-motion seeking discovery sanctions against Plaintiff.

Earlier in this case, Plaintiff filed another motion to compel discovery that the Court denied without prejudice based in part upon Plaintiff's failure to "fully" exhaust her extrajudicial efforts to resolve the dispute.  (Doc. 37).  However, the Court noted that "[d]espite that procedural irregularity, the undersigned does not condone Defendant's apparent failure to reply to Plaintiff's email," which attempted to obtain supplemental responses.  On the merits, the Court explained that Plaintiff's motion did not sufficiently identify the discovery as to which she sought production over Defendant's objection. Therefore, the Court explained that, if she first satisfied all procedural requirements, "Plaintiff may re-file a motion to compel that better articulates what specific discovery responses remain in dispute, the relevance of the requested discovery, and why she believes Defendant's objections lack merit."  (Doc. 37 at 2).  Plaintiff's "Amended Motion to Compel" sets forth Plaintiff's extrajudicial attempts to resolve the discovery dispute prior to filing a motion with this Court, and includes copies of email communications between herself and defense counsel as exhibits.  (Doc. 57).  Additional exhibits are attached to Defendant's response to Plaintiff's motion, as well as to Plaintiff's reply memorandum. (Docs. 58, 61).

II.     **Plaintiff's Discovery Motion and Defendant's Motion for Sanctions**

A.  **Plaintiff's Request for Initial Disclosures**

Plaintiff states in her motion that Defendant mailed its "initial Disclosures" via FedEx on December 13, 2019 "to the wrong address."  (Doc. 57 at 22).  Plaintiff's motion further states:

> On January 17,, 2020, Plaintiff requested by email a copy of the Initial Disclosures… *Defendant has never responded*.

> Again, Plaintiff filed her initial Motion to Compel on September 21, 2020, and *since filing that Motion, Defendant has yet to produce to Plaintiff its initial disclosures*.

(Doc. 57 at 22)  (emphasis added).

In its response, Defendant states that it mailed initial Disclosures to Plaintiff's address of record in December of 2019.[5]  Plaintiff did not update her address of record until April 20, 2020; therefore, any failure of the initial disclosures to reach Plaintiff in December 2019 was not caused by Defendant but by Plaintiff's failure to keep her address current with this Court.  Plaintiff's representations that Defendant "has never responded" and "has yet to produce… initial disclosures" are misleading, if not intentionally false. Defendant previously sent a second electronic copy of the initial disclosures to Plaintiff (at the same listed address of record) in direct response to Plaintiff's January request. However, Plaintiff now admits that her "assistant" simply misplaced that electronic copy. (*See* Doc. 58-6, Ex. E).  Again, that is not Defendant's fault.

Plaintiff asserts in her reply memorandum that her statement that "Defendant has yet to produce to Plaintiff its initial disclosures" was in reference to her request that

---

[5] Plaintiff testified at her deposition that 4620 Chalet Drive is her mother's residence, but that she occasionally resided with her mother and received mail there.  (Doc. 45 at 42-43).

Defendant send a second electronic copy (the third copy in total) of the same initial disclosures that Plaintiff now admits she received but misplaced. The Court declines to direct Defendant to send Plaintiff a third copy of its initial disclosures. However, in the interests of justice, the Court directs Defendant to file an electronic copy of the initial disclosures in the record of this Court as a "Notice." In that manner, Plaintiff may obtain access to the disclosures and they cannot be again misplaced.

### B. Plaintiff's Request for Ten Depositions

Plaintiff's motion to compel Defendant to provide ten depositions also contains misleading or false statements. Plaintiff's motion states that she began to seek the depositions in May 2020, but states that former defense counsel "canceled the first set of scheduled depositions." (Doc. 57 at 17). That statement is false; Plaintiff herself canceled the first set of depositions of deponents.

Defendant has attached email correspondence that confirms that three depositions were scheduled to take place via Zoom on July 29, 2020. On the morning of July 16, former defense counsel advised that he "will have Andrew Glancy, Jeffrey Knauer & Brian Bull present with me as you requested…." (Doc. 58-11, Ex. J). However, in an email later the same day at 6:24 p.m., former defense counsel clarified that "Because of travel restrictions & pandemic considerations, the depositions will be by Zoom [video]." (*See* Doc. 58-13, Ex. L). The same email advised that additional deponents would need to be properly noticed under Rule 30, which "requires reasonable notice." (*Id*.) At 11:01 p.m. on July 16, Plaintiff canceled the three July 29 depositions, stating: "After reviewing my financial situation, I am unable to bear cost for the Deposition [of Andrew Glancy, Jeffrey

Knauer, and Brian Bull] on July 29th. I am canceling Deposition [sic] until further notice."
(Doc. 58-14, Ex. M).

Plaintiff now claims that she canceled the July 29 depositions on July 16th "due to
defendant demanding ZOOM depositions without proper notice," and that she "was forced
to cancel… to seek out proper protocol for conducting ZOOM depositions." (Doc. 62 at
2). However, the email exhibits provided by Defendant speak for themselves and reflect
that Plaintiff canceled the first set of depositions based upon "financial" concerns.

After canceling the three depositions that had been set for July, Plaintiff again
sought dates for depositions. On August 13, 2020, Plaintiff emailed a new request for ten
depositions, asking for availability in "the month of September." (Doc. 58-15, Ex. N). It
took defense counsel seventeen days, until August 30, to respond, at which time he
proposed just three depositions to be scheduled for October 29 – the day before the end
of the discovery period. Plaintiff complains that former counsel promised to "get back
with Plaintiff regarding scheduling the other seven (7) deponents" but failed to do so.
(Doc. 57 at 18). By way of explanation, defense counsel now suggests that Defendant
was hesitant to schedule ten depositions in light of Plaintiff's prior cancellation for
"financial" reasons, and the busy schedules of Postal Service managerial employees.

Several emails were exchanged regarding dates for the three depositions that
Defendant agreed to schedule, with Plaintiff advising that she was not available after
October 10, 2020. (*See* Doc. 58-16 through Doc. 58-21). On September 8, 2020, the
parties agreed to the dates of October 8-9, with former defense counsel reiterating that
the depositions would be conducted "by Zoom at our offices." (Doc. 58-21). Defense

counsel subsequently confirmed that Glancy, Knauer, and John Rachlow (in place of the previously scheduled Brian Bull) would be made available on October 8.

Six days later on September 14, 2020, Plaintiff wrote again to insist that all ten (10) requested deponents should appear on the agreed-upon consecutive days, rather than merely Glancy, Knauer and Rachlow:

> I look forward to seeing all 10 witnesses at 10 am to be deposed on October 8th via Zoom. If all witnesses are not deposed on October 8th remainder of witnesses will be deposed the next day on October 9 at 10 am. Expect to be available at least 7 hours each day. Failure to appear will result in sanctions filed against you. These dates are not up for debate or discussion unless the Court says otherwise.

(Doc. 58-22, Ex. U). In a responsive email transmitted the same day, Defendant reiterated that it would produce only Glancy, Knauer and Rachlow on October 8, and that any remaining depositions would have to be scheduled at a mutually agreeable date in the future. (Doc. 58-23, Ex. V). However, Defendant offered no additional dates.

Plaintiff asserts that "just days prior" to the October 8 depositions, "Mr. Pantel changed the location of the remote depositions to allow deponents to appear at whatever location they chose, not at the agreed upon location at the U.S. Attorney's Office." (Doc. 57 at 18). The record reflects that by email dated October 2, 2020, Defendant confirmed that the three deponents would be available from their respective locations by Zoom. In addition, because Plaintiff had advised that she had counsel who would appear by Zoom at an "undisclosed location," defense counsel inquired if Plaintiff's counsel had filed a Notice of Appearance. (Doc. 58-24, Ex. W). Plaintiff responded affirmatively. (Doc. 57-1 at 12).[6] In a separate email the same day, Plaintiff wrote: "You indicated on several occasions depositions will be held at your office via Zoom." (Doc. 58-25, Ex. X). In reply,

---

[6]Contrary to Plaintiff's email, no Notice of Appearance has been filed.

counsel reiterated: "Yes, the depositions will be held at my office by Zoom. The deponents will participate by Zoom from their respective locations." (*Id*.)

At 4:03 p.m. on October 2, Plaintiff set forth her (mistaken) impression that Defendant had suddenly altered the terms, and that an earlier reference to Zoom from counsel's office meant he was "waiving your client's right to participate via Zoom at home." (Doc. 58-26, Ex. Y). Plaintiff argues that the "change" in remote location "put an undue burden on Plaintiff to verify that all parties were equipped with the proper technology requirements to successfully participate in the depositions." (Doc. 57 at 18). She attempted to communicate her concerns by email.

> Plaintiff's October 6, 2020 email to Mr. Pantel basically stated that Mr. Pantel, due to his last minute changes to the Zoom location of deponents, that he needed to ensure that each deponent's location and equipment met a certain technology standard and that the deponent's [sic] were fully trained to successfully participate in the court-ordered discovery remotely. …Mr. Pantel ignored Plaintiff's last emailed stipulations… and Plaintiff was forced to cancel the depositions because no assurances were made as to the reliability of technology available to the deponents at their unknown locations.

(Doc. 57 at 19).

Plaintiff insisted that counsel ensure that "all deponents have a computer or laptop with camera and audio capabilities and a strong internet connection…" and that "all deponents undergo a pre-deposition training session prior to the start of the deposition." (*Id*.) A follow-up email at 6:05 p.m. lists 5 specific demands. (Doc. 57-1 at 17). Defendant responded only by reiterating that the deponents would be available by Zoom. Defendant states it would "not agree to Plaintiff's unreasonable request of subjecting [the witnesses] through a pre-deposition training session, especially since there is no discovery rule or court order requiring them to undergo such process." (Doc. 58 at 25).

On October 6, 2020, Defendant filed a Notice stipulating to Plaintiff's own Notice to Take Deposition, subject to the deponents appearing remotely by Zoom at their respective locations. (Doc. 56).  Dissatisfied with Defendant's response to her demands, Plaintiff canceled the depositions on October 7 at 4:58 p.m., the eve of the scheduled depositions, "until further notice by the Court"  (Doc. 58-27, Ex. Z).

On the same day that she unilaterally canceled depositions for a second time, Plaintiff filed the instant amended motion to compel Defendant to produce ten deponents and for sanctions.  Plaintiff accuses former defense counsel of "maliciously and in bad faith chang[ing] the terms of the October 8, 2020 scheduled and noticed depositions to put an undue hardship on Plaintiff as to required technology." (*Id.*)  But the record reflects that once again, responsibility for the three canceled depositions lies with Plaintiff.

It is clear that Plaintiff misinterpreted or misunderstood defense counsel's references to the depositions being conducted by Zoom from the U.S. Attorney's office. The Court understands that Plaintiff may sincerely believe that Defendant changed the Zoom location of the witnesses. However, a basic understanding of remote deposition technology leads the Court to conclude that Defendant did not change the location.  As Defendant points out, "[t]here would have been no point for Zoom if the witnesses were able to be deposed in-person at the U.S. Attorney's Office." (Doc. 58 at 25).  Defendant first stated on July 16 that depositions were to be conducted via Zoom.  When Plaintiff canceled and rescheduled new depositions for October, Defendant never indicated any change to the planned format.  Indeed, Plaintiff's September 14 email also refers to conducting the depositions by Zoom.

Defendant convincingly refutes Plaintiff's contention that she was "forced" to cancel the depositions a second time at the eleventh hour.  There is nothing in the record to suggest that any of the deponents lacked the ability to participate in their scheduled depositions.  Defendant's October 6, 2020 Notice Stipulating to Plaintiff's Notice to Take Deposition should have been sufficient to satisfy Plaintiff's concerns.  In short, the undersigned concludes that Plaintiff's second last-minute cancelation of the October depositions was unreasonable.

At the same time, Defendant is not blameless.  Former defense counsel deliberately ignored Plaintiff's August 13 request to set additional dates for seven more depositions.  Defendant now claims that it was fully prepared to work with Plaintiff to find dates for the additional 7 depositions *after* the first three depositions had been completed.  Yet, former defense counsel never provided *any* dates within the remaining discovery period.  Instead, in his opposition to Plaintiff's motion to compel, counsel argued that the scant two weeks remaining in the discovery period was sufficient.  (*See* Doc. 58 at 27, "There is no evidence that any remaining relevant witnesses cannot be scheduled, in groups, before October 30, 2020.").

In 20/20 hindsight, Defendant had some cause to be concerned about the possibility Plaintiff would cancel scheduled dates. Plaintiff's second cancelation of depositions the night before they were to occur was undoubtedly disruptive.  Still, the Defendant was wrong to refuse to offer <u>any</u> deposition dates for *months* after Plaintiff requested them.   If  Plaintiff had rejected all proffered dates based on her unavailability for October, then the onus would have been on Plaintiff to show "good cause" for further modification of the Court's calendar order, without which showing she would have

forfeited her opportunity to take the additional depositions. If the Defendant agreed to schedule and she again unreasonably canceled, Defendant would be permitted to seek sanctions, including a non-monetary sanction of limiting Plaintiff's ability to reschedule and/or a monetary sanction for any incurred costs. However, by failing to respond to Plaintiff's continued and repeated requests for deposition dates, Defendant itself acted unreasonably.

To be clear, the Court is not excusing Plaintiff's wrongdoing, which includes canceling depositions (twice), misrepresentations to this Court, some uncivil emails and unreasonable demands to former defense counsel, and an asserted unavailability for much of the discovery period. However, in reviewing the record as a whole, the Court also cannot excuse former defense counsel's failure to adequately respond to discovery requests that fell within the boundaries of the Federal Rules of Civil Procedure. Former defense counsel's regrettable failure to respond is even more apparent in the Court's review of Plaintiff's motion to compel supplemental written discovery responses.

On balance, the Court concludes that non-monetary sanctions should be imposed on both parties. Thus, Defendant will be compelled to produce up to 10 witnesses by this Order. Plaintiff is ordered depose said witnesses by Zoom with all depositions to be completed by May 7, 2021. However, based on Plaintiff's prior unreasonable cancelation of scheduled depositions, and to avoid further unnecessary disruption, Defendant may restrict the availability of each deponent to a deposition of no more than 2 hours. Plaintiff and Defendant will be expected to work expeditiously to schedule dates.

### C. Plaintiff's Requests for Supplemental Written Discovery

Plaintiff's motion to compel Defendant to supplement its written discovery does not suffer from the same type of misleading statements that permeate Plaintiff's discussion of Defendant's production of its initial disclosures or the cancelation of depositions. On the whole, Plaintiff's motion to compel supplemental responses to her Interrogatories and Requests for Production is well-supported. In opposition, Defendant mostly relies upon "relevance" objections that assume a self-interested interpretation of disputed facts.

### 1. Interrogatories Regarding Comparators

In her 2018 EEO proceeding and responses to Defendant's interrogatories, Plaintiff identified four potential comparators allegedly permitted to fill detail positions or disciplined less harshly with respect to their absences from work. In this lawsuit, Plaintiff seeks discovery about additional potential comparators. Such discovery is relevant and permissible.

For example, Interrogatory 2 of Plaintiff's First Set of Interrogatories asked Defendant to "identify each and every employee…whose request for detail was granted, the location to which he or she was detailed, the time of the detail assignment, the job title and duties to which he or she was assigned…and the duration of each detail; and the decision maker who granted the request for each and his or her title," along with the "race, color, national origin, and sex for each." Interrogatories 3 and 4 request similar information concerning detail requests granted by either Jeffrey Knauer or by Chris Bruno. Defendant reasonably objected to the initial iteration as overbroad, considering the Interrogatories were not limited to any particular position, detail or supervisor and the Cincinnati center employed more than 3,800 people between January 1, 2015 and

December 31, 2017.  However, Plaintiff later refined her request by limiting the scope of potential comparators to "each Mail Processing Clerk" within a temporal scope defined as "between January 1, 2015 and February 31 [sic], 2018."  (Doc. 62-1 at 3).  Defendant still failed to respond.

The Court can agree with Defendant that Plaintiff is entitled to discover only information relevant to similarly-situated individuals. However, the Court cannot agree with Defendant's position that because Plaintiff has been unable to prove (to date) "that there were any openings to be filled," that the "information regarding potential comparators who applied for details is not relevant." (Doc. 58 at 8).  Defendant points to no definitive evidence (as yet) that no Mail Clerks at the Cincinnati facility (other than Plaintiff) were assigned any details from January 2016 through January 2018.

In addition, the Court does not agree that information about potential comparators is irrelevant simply because Plaintiff has failed to produce formal written applications and/or written rejections denying her details during the time periods in question. Defendant describes Plaintiff's Interrogatories as a "fishing expedition for comparators when there is no record or any other evidence showing that she applied for and was rejected for details and/or promotions during the alleged period of time."  (Doc. 58 at 9). But Defendant's position inappropriately asks this Court to define relevance by accepting Defendant's version of facts over Plaintiff's version.

Plaintiff admitted in deposition testimony that she received no written or other express denials but she also testified (contrary to Defendant's argument) that she made multiple requests and/or inquiries seeking details.  She testified that her repeated requests for details were met with silence or otherwise ignored – essentially, denials

through non-responses and non-selections.  (*See generally*, Doc. 45 at 53-57; Doc. 69-5 at 22).  Contrary to Defendant's position that some form of written and formal application for a detail must be made, Plaintiff's testimony suggests that employees can apply for "details," which are temporary and time-limited positions, through informal methods including verbal or email requests to supervisory officials, or through an expression of interest or other application made via the "Skills Bank."[7]  (*See also*, *generally*, Doc. 70-17 at 3)

Defendant asserts that Plaintiff's failure to produce a written Form 991 application shows that she did not apply for any detail, implicitly urging this Court to conclude (without directly stating) that a Form 991 application is required for all detail positions.  However, at this juncture, the process for applying for a detail appears to be a disputed issue. Plaintiff is entitled to discover (if it exists) any evidence that Defendant failed to select her for details based upon her alleged requests (whether verbal or written), while awarding such details to other similarly situated individuals.[8]  Defendant will be compelled to respond.  For purposes of Plaintiff's requests, similarly situated individuals will be defined as employees who held the same position as Plaintiff,[9] and who sought details from the same list of supervisors referenced in Plaintiff's federal complaint[10] between January 2016 and January 2018.  The Court will further limit the scope of Plaintiff's requests to

---

[7]In her deposition, Plaintiff testified that detail assignments are "just a general assignment that they can just assign to whoever is interested" and are not necessarily posted positions. (Doc. 45 at 81).  All of the "details" that Plaintiff sought were "a general 204B [sic] position, whatever they had available." (*Id.*)

[8]In the absence of clear and undisputed evidence concerning the application process for details, potential comparators could include other Mail Clerks who applied for details verbally, through emails, or through *any* form of written or electronic applications, including but not limited to Form 991 or the Skills Bank.

[9]Defendant suggests that Plaintiff should be further restricted to Mail Clerks with a similar level of experience.  However,  that definition is too narrow for purposes of discovery.

[10]The relevant "responsible management officials" who are alleged to have denied details are Brian Bull, Jeffrey Knauer, Mark Wilson, Roosevelt Thompson, John Rachlow, Chris Bruno, Reginald Smithson, and Chris Smith.

204-B details, based upon Plaintiff's deposition testimony identifying all of her requests for details in reference to that position.

In Interrogatory 5 of her second Set of Interrogatories, Plaintiff sought more information about details, initially asking (in part) if Defendant followed "all agency policies, rules, and procedures in the issuance of details." Defendant objected to responding "as phrased." Plaintiff rephrased as follows: "Please state all USPS rules, regulations, policies and procedures used to determine and/or decide which Mail Processing Clerks, PSEs, Mail Handlers, and MHAs will be granted a detail and to where." Defendant will be compelled to respond to the rephrased interrogatory, limited to the relevant time period of January 1, 2016 through January 31, 2018.

Plaintiff also complains that Defendant has failed to produce her "Skills Bank Applications" requests. In response, Defendant asserts that Plaintiff herself "has not provided any evidence showing that any of the alleged applications she completed through the Skills Bank involved any of the alleged responsible management officials named in her two EEO matters." (Doc. 58- at 8-9). Defendant will be compelled to produce to Plaintiff copies of her Skills Banks Applications for the period between January 2016 and January 2018.

In her reply memorandum, Plaintiff additionally asserts that Defendant refused to release documents showing "Skills Bank Applications" (by other employees) and granted by either Knauer or Bruno between January 1, 2015 and December 31, 2017. Again, subject to the relevant time period alleged in the complaint, Defendant will be compelled to produce the requested information if it exists.

## 2.  Interrogatories Relevant to Denial of Leave Requests and Discipline

In Interrogatory 7 of her First Set of Interrogatories, Plaintiff sought a "detail[ed]" explanation "for each and every denial of Plaintiff'[s] request[s] for leave at any time between January 2016 and August 17, 2018."  Defendant states that the reasons for denial of leave requests is contained in Plaintiff's written form requests, identified as her PS 3971 Forms, which Defendant claims to have produced (though Defendant does not provide reference to Bates numbered documents or identify the date of such production). In her reply memorandum, Plaintiff denies that the 3971 Form contains the explanations for the denial of all leave requests.  To the extent that additional information exists, Defendant will be compelled to supplement its response by providing not only the relevant PS Form 3971 Forms (specifically identified by Bates number), but also by affirmatively stating whether any additional reasons exist for the denial of leave requests.

In Interrogatories 8-10, Plaintiff seeks information concerning the March 2019 decisions by Plant Manager Glancy that Plaintiff was unable to perform the duties of her position, including but not limited to the identify of individuals with whom he consulted, documents he consulted, and how he reached his conclusion that Plaintiff's March 15, 2019 notice "indicating that she was eager to return to work and …was scheduled for another medical assessment in mid-April 2019, was not sufficient to allow her to return to work at that time or shortly thereafter."  Interrogatory 11 seeks similar information as to how Glancy "came to a conclusion as stated in his April 3, 2019 Notice of Separation," that "there is no expectation" that Plaintiff would return to work.

Interrogatory 12 seeks information on potential comparators who were disciplined or separated from employment based upon their absence from work, specifically seeking

the identity of individuals who were on any type of leave for more than 10 months and allowed to return to work within the past 5 years prior to April 3, 2019, and their race, color, national origin and sex. Interrogatory 13 seeks an explanation of "why Plaintiff's physician Dr. Kent Robinson's notice of April 4, 2019 indicating that as of April 16, 2019 she was allowed to return to work without medical restrictions, was not sufficient…." Interrogatory 14 seeks "applicable policies and union contract provisions that were applied in support of Mr. Andrew Glancy's issuance of the April 3, 2019 notice of separation."

Defendant generally refers to its supplemental discovery responses produced on September 28, 2020 concerning "the removal issue" that this Court found to be within the scope of Plaintiff's exhausted 2018 EEO claims.[11]  (Doc. 58 at 9, citing Doc. 58-2, Ex. A). However, Plaintiff states that the Defendant's supplemental production was a "document dump" of 1,019 email documents spanning a two-year period, which does not designate the specific responsive documents as required by Rule 34.[12] Defendant concedes that it produced the referenced documents by conducting an "email search" for Plaintiff's surname, "Seifu," among a group of core individuals for the date range January 1, 2017 through June 1, 2020.[13]  (Doc. 58 at 10).  In addition to the undifferentiated references to

---

[11]Plaintiff maintains that she did not receive the supplemental documents until October 26, 2020, because they were delivered to a neighbor's address.  (*See* Doc. 62 at 9, "Defendant's Supplemental Responses… were mailed/received at the wrong address.").

[12]Multiple portions of Defendant's response in opposition to Plaintiff's motion appear to be from an internal draft that the undersigned can only assume was unintentionally filed of record by former counsel. (*See, e.g.,* Doc. 58 at 11: "Did we provide the information?"; *id.* at 12: "Was anything cited?"; *id.* "I think we have to cite to or quote our answer."; *id.* at 14 "Did we provide a substantive response?).  To be fair, some portions of Plaintiff's pro se reply memorandum also appear to have been inadvertently filed, insofar as they refer to "LGBT claims" which have not been pleaded in Plaintiff's case.  (*See, e.g.,* Doc. 62 at 8 "The request is directly germane to the LGBT claims pled and at issue in this case.").

[13]It is unclear to the Court why Defendant restricted the date range to January 1, **2017**, given that the relevant time period begins in January **2016**.

the entire collection of emails, Plaintiff complains that 208 of the 1,109 documents all contain the same mismarked bates stamp "Seifu000001."

Based upon the Court's review, Defendant will be compelled to supplement its responses to Interrogatories 8-14 of Plaintiff's First Set of Interrogatories, including (if appropriate) by reference to *specific* responsive documents.[14]

In Interrogatory 9 of her Second Set of Interrogatories, Plaintiff asked Defendant to "state with particularity all facts supporting the contention" that "there [was] a legitimate nondiscriminatory reason for all adverse employment actions taken against" Plaintiff. Defendant objected on the basis that the Interrogatory was vague and overly broad. Plaintiff narrowed the request to ask "the Agency's alleged legitimate nondiscriminatory reasons [for]…the Letter of Separation subject to the claims in this case." Defendant will be compelled to supplement its response to the narrowed request. Last, Interrogatory 10 of Plaintiff's Second Set sought "all facts supporting the contention" that "the conduct alleged in Plaintiff's complaint would not be offensive to a reasonable person." Defendant objected to Interrogatory 10 as vague and overly broad. The Court agrees and sustains that objection.

### 3. Plaintiff's Requests for Production of Documents

In her First Set of Requests for Production, Request No. 1, Plaintiff sought documents showing termination of employees for non-work related attendance-related reasons for the past 5 years, including the identification of their race, color, national origin, and sex. Request 2 seeks records for employees "who were absent due to non-work

---

[14]If Bates numbers are used, any errors in the Bates numbering system should be corrected and some form of additional document description should be included within the first reference. For example, Defendant might cite to "Siefu000001-2, Plaintiff's USPS Form 50" as the initial citation, though subsequent citations may be shortened.

related injuries for more than 12 months within the past 5 years."  Request 3 seeks for the same group of employees, "copies of records showing return to duty of each and every individual after taking non-work related absences lasting more than 12 months." Request 4 seeks records for employees "who took longer than 12 months of absence due to non-work related injury in the past 5 years."  Request 5 seeks copies of records "whose involuntary separation of any and all employees within Cincinnati P&DC for the past 5 years prior to April 3, 2019," with identification of race, color, national origin and sex for each."  Request 6 seeks records "showing any and all suspension of 5 days or more issued to employees at Cincinnati P&DC for attendance related reasons, except for absences due to work related injuries, for the past 5 years…."

Defendant initially objected to all of Plaintiff's Requests for Production as "vague, ambiguous, overly broad, unduly burdensome, not reasonably limited in time, …seeks information not relevant to this case and/or proportional to the needs of this matter." Plaintiff subsequently narrowed the scope of Request 1 "to any and all Mail Processing Clerks at the Cincinnati P&DC… under the supervision of RMOs Glancy, Knauer, Hill and Bruno[,] who were terminated for non-work related attendance in the last three (3) years." The Court finds this more narrowly defined group of potential comparators to be appropriate.

Defendant additionally objected "on the basis that [the requests] seek[] information protected from disclosure by the Privacy Act." The latter objection is addressed by Plaintiff's offer to enter into a confidentiality/protective order.  <u>Subject to a reasonable protective order, Defendant will be compelled to produce responses for First Requests 1-6, but limited to the category of Mail Processing Clerks at the Cincinnati facility under the</u>

supervision of RMOs Glancy, Knauer, Hill or Bruno, and further limited to the three year period prior to April 3, 2019.

In her Second Set of Requests for Production, Request 5, Plaintiff sought copies of records showing "termination of employees at Cincinnati P&DC or Springdale Annex, other than Plaintiff, for non-work-related attendance related reasons for the past 5 years," and the respective identifies of race, color, national origin, and sex.  Request 6 sought records showing employees at the Cincinnati P&DC and the Springdale Annex who were absent due to non-work-related injuries for more than 10 months…."  Defendant again objected to the requests with general objections offered in lieu of any substantive responses.  Plaintiff narrowed her requests to "the names of all Mail Processing Clerks under the supervision of Andrew Glancy, Jeffrey Knauer, Tina Hill, and Chris Bruno who were terminated in the last 5 years, prior to April 3, 2019 for non-work-related attendance." The Court again concludes that the narrowed scope of comparators is appropriate and will compel Defendant to respond.

Defendant states that it previously responded by advising Plaintiff that "information and records relating to potential comparators are found in the Reports of Investigation in the two EEO matters which Plaintiff has a copy of."  (Doc. 58 at 16).  That response is facially incomplete; the only comparators discussed in the EEO report were the four individuals identified by Plaintiff herself.  Therefore, to the extent that additional records exist, Defendant will be compelled to fully respond to Plaintiff's Second Set of Requests 5 and 6.

### D. Motion to Extend/Reopen Discovery

Although Defendant will be compelled to promptly supplement its responses to the written discovery requests identified above, Plaintiff will not be permitted to conduct additional written discovery, nor will any delays in expeditious scheduling be excused. Discovery is reopened solely to permit Plaintiff a limited time period in which to complete Zoom depositions in accordance with the specified limitations. Plaintiff is responsible for all costs of the depositions, and is forewarned that the Court will consider the imposition of a monetary sanction if she again cancels scheduled depositions.

### E. The Cross-motions for Sanctions

As should be readily apparent, the Court finds both parties to be at fault in the complete breakdown in communications that have led to the pending discovery motions. At this time, no monetary sanctions are warranted. Defendant's wrongdoing is addressed by this Order compelling its current counsel to supplement its discovery responses and to allow Plaintiff to take up to ten depositions. Plaintiff's misrepresentations to this Court and unreasonable cancelation of prior depositions are addressed by the imposition of strict time limits for the depositions that she will be permitted to take.

### III. Conclusion and Order

For the reasons stated, **IT IS ORDERED THAT**:

1. Plaintiff's motion to extend the discovery deadline, to compel additional discovery, and for sanctions (Doc. 57) is **GRANTED in part and DENIED in part**;

   a. Plaintiff's request to compel Defendant to produce additional written responses to her discovery requests is granted as detailed above.

Defendant shall produce its supplemental written responses on or before **April 12, 2021**;

b. Plaintiff's request to continue/reopen discovery for the limited purpose of taking Zoom depositions is granted, with discovery to be reopened until May 7, 2021 during which Plaintiff may take no more than ten (10) depositions, limited to a time limit of 2 hours for each deponent;

c. Plaintiff's motion for sanctions is denied;

2. Defendant's motion for sanctions (Doc. 61) is **DENIED**;

3. **Neither party may file any additional discovery-related motions**. Should any further dispute arise, the parties are to first fully exhaust extrajudicial efforts to resolve the dispute. Only if efforts to resolve the dispute without court intervention have failed may the parties contact Courtroom Deputy Clerk Kevin Moser at 513-564-7680 in order to request an informal telephonic hearing on the issue in dispute.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge