**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISON**

ZEN SEIFU

    Plaintiff,

v.

POSTMASTER GENERAL,
U.S. POSTAL SERVICE,

    Defendant.

Case No: 1:19-cv-572

Bowman, M.J.

**MEMORANDUM OPINOIN AND ORDER**

Ostensibly proceeding pro se[1] and *in forma pauperis*, Plaintiff Zen Seifu initiated this action against her employer, the U.S. Postal Service. The parties have consented to disposition by the undersigned magistrate judge. *See* 28 U.S.C. § 636(c); (Doc. 14). Currently pending before the Court is Defendant's motion for summary judgment and Plaintiff's response in opposition. (Docs. 69, 70). Based upon a separate Memorandum Opinion and Order filed herewith that concerns unresolved discovery issues, the Court finds Defendant's motion for summary judgment to be premature but for one discrete claim. For the reasons that follow, Defendant's motion will be GRANTED as to that claim, but otherwise denied without prejudice to file a new motion following the brief period of reopened discovery.

---

[1] Plaintiff retained counsel, Edward J. Felson, for two prior EEO proceedings. Attorney Felson also appeared on Plaintiff's behalf at her deposition in this case, (*see* Doc. 45 at 62, stating he was entering his appearance "[f]or the purpose of this deposition"), notwithstanding that no formal Notice of Appearance has been filed of record. Plaintiff testified that she did not prepare the complaint alone but "received assistance from an attorney, an attorney friend" (other than Mr. Felson). (Doc. 45 at 51). For purposes of the pending motion, the undersigned has reviewed the pleadings under the standards applicable to pro se litigants. *But see Kelly v. First Data Corp.*, 2020 WL 419440 at 13 (S.D. Ohio Jan. 17, 2020) (declining to afford a complaint that had been "ghostwritten" by non-appearing counsel the same degree of liberality ordinarily afforded to pro se pleadings).

**I.  Background**

The instant federal employment discrimination case seeks redress for claims filed by Plaintiff in a 2018 Equal Employment Opportunity ("EEO") complaint.  Prior claims included by Plaintiff in an earlier 2016 EEO complaint are not directly before this Court for review. (*See* Doc. 31 at 11, n.5).  However, the 2016 EEO complaint remains relevant because Plaintiff's 2018 EEO complaint alleges retaliation on the basis of that prior EEO activity.  In addition, Defendant cites to exhibits from the 2016 EEO proceedings to support its motion for summary judgment.

As amended, Plaintiff's 2016 EEO complaint alleged discrimination based upon her race, color, national origin, and religion, and retaliation based upon current EEO activity.  (Doc. 69-4 at 5; *see also* Doc. 70-2 at 13-14, 18-19).  During a prehearing conference and at the hearing itself, Plaintiff dismissed her claims of discrimination based upon race, color, national origin, and religion, but the Agency included the claim of discrimination based upon sex in light of allegations of sexual harassment. (Doc. 69-4 at 7).  In a bench decision issued on June 27, 2018, the EEO administrative judge found for Defendant on the merits of all claims, concluding that Plaintiff "has failed to show..that she was subjected to discrimination on the basis alleged." (*Id.* at 10).  Plaintiff filed no timely appeal.[2]

Approximately two months before the adverse decision on her 2016 EEO complaint, Plaintiff filed a second EEO complaint, alleging that a new set of responsible management officials ("RMOs")[3] had discriminated against her on the basis of her race,

---

[2]In her "statement of facts" filed in opposition to summary judgment, Plaintiff asserts that "Defendant engaged in bad faith litigation and intentionally presented falsified evidence" in the 2016 proceeding, causing the EEO Administrative Judge to rule against her. (Doc. 70 at 4).  This is argument, not fact. Having failed to appeal the adverse decision, Plaintiff may not relitigate the issues in this Court.
[3]Brian Bull was named in both the 2016 and 2018 EEO complaints.  However, in her 2016 EEO complaint, Plaintiff did not initially identify Mr. Bull, and never called him as a witness or provided his name to the

color sex, and prior EEO activity. (Doc. 69-5 at 1). The second 2018 EEO case was assigned to a new EEO administrative judge. Before that judge held a hearing or rendered a decision, Plaintiff initiated this lawsuit. In her federal complaint, Plaintiff alleges discrimination based on her race (Black), color (Brown), national origin (Dominican Republic and Ethiopia), sex (Female), and retaliation/prior protected activity. (Doc. 3).

Defendant previously filed an untimely motion to dismiss, arguing in part that Plaintiff had not administratively exhausted her 2018 EEO claims as required prior to filing suit. In addition to denying Defendant's motion on procedural grounds, the Court alternatively rejected Defendant's failure-to-exhaust argument on the merits. The undersigned found persuasive Plaintiff's argument that she should be deemed to have administratively exhausted the claims presented in her second 2018 EEO complaint because the complaint had been pending for more than 180 days without a final decision.[4] (Doc. 31 at 9, citing 29 C.F.R. §1614.407(b); 42 U.S.C. § 2000e-16(c); *see also* Doc. 52 at 3-7). The Court clarified that it construed Plaintiff's federal complaint as limited in scope to the claims presented in Plaintiff's 2018 EEO complaint, as amended.

Broadly speaking and as liberally construed, Plaintiff's 2018 EEO complaint alleged that Defendant discriminated against her based upon a protected classification, and retaliated against her based upon prior EEO activity, when Defendant took the

---

agency during discovery. (Doc. 70-3 at 27-28, 35-36). The administrative judge dismissed claims of sexual harassment and hostile work environment related to Mr. Bull, but nevertheless directed the agency to "take a look at Mr. Bull's conduct" based upon the testimony of a witness. (Doc. 70-3 at 34).

[4]Plaintiff requested an EEOC hearing prior to filing a complaint in this Court. Presumably due to Plaintiff's continuing amendments, the assigned EEO administrative judge did not hold an evidentiary hearing or issue a decision within 180 days of the *initial filing date* of the 2018 EEO complaint. Instead, the EEO judge dismissed the entire 2018 EEO complaint after Plaintiff filed her federal complaint in this Court on July 18, 2019, implying (mistakenly) that all claims (including those added through amendment) had been pending for more than 180 days. (Doc. 52 at 3; *see also* Doc. 69-8).

3

following "adverse" actions against her: (1) Defendant failed to promote her on multiple occasions; (2) Defendant repeatedly disciplined and ultimately terminated her; and (3) Defendant inadequately investigated an alleged workplace assault.

In its 2018 EEO proceeding, the Agency more particularly described the claims accepted for review as follows:

1. In November and December 2017, Plaintiff was denied details and/or promotions;[5]

2. On January 5, 2018, she was injured after being assaulted at work;

3. On January 22, 2018, she received a Letter of Warning dated January 16, 2018;

4. On July 22, 2018, she was instructed via letter to report for an Investigative Interview and on July 22, 2018, and subsequently, on August 17, 2018, she was issued a Notice of Suspension of 7 Days; and

5. On September 7, 2018, she was scheduled for a Pre-Disciplinary Interview.

(Doc. 69-5 at 17, Investigative Summary).

Plaintiff amended her 2018 EEO complaint several times, resulting in the following additional claims:

1. In January 2016, August 2016, December 2016, February 2017, August 2017, and September 2017, she was also denied details;

2. After the January 5, 2018 alleged assault, management failed to take appropriate actions including an investigation;

3. In April 3, 2019, Plant Manager Glancy issued a Notice of Separation – Non-Disciplinary, separating Plaintiff from her employment effective April 30, 2019 due to her "inability to perform the essential functions of your position," based upon her absence from work for more than a year.

---

[5]Although the denial of "details" and the denial of "promotions" are listed as separate claims in the EEO Report, the record reflects that a "detail" is a type of *temporary* promotion, such that Plaintiff's claim that she was denied a detail is not legally distinct from a failure-to-promote claim.

4

(Doc. 69-7). Eventually, Plaintiff was separated from her employment pursuant to the April 3, 2019 letter, and that claim also was added to the 2018 EEO complaint and this federal case.

Discovery in this case has been contentious. Shortly before the discovery deadline, Plaintiff filed a motion to compel discovery, to extend discovery, and for sanctions. Defendant filed a counter-motion for sanctions based upon Plaintiff's alleged misrepresentations to this Court and cancellation of two sets of depositions. By separate Memorandum Opinion and Order filed this day, Plaintiff's motion has been granted in part, with Defendant directed to supplement its responses and discovery to be reopened for a limited period.

While the discovery motions were still pending, Defendant timely filed a motion for summary judgment on all claims. Plaintiff filed a response on January 19, 2021, to which Defendant filed no reply. (Docs. 69, 70). Defendant's motion is supported by evidentiary exhibits,[6] but relies heavily upon Plaintiff's inability to discover evidence that she claims is within Defendant's sole control and as to which additional discovery has now been compelled. Because discovery is (as yet) incomplete on claims that Defendant discriminated and/or retaliated against Plaintiff by failing to promote her and by disciplining her, the Court finds Defendant's motion for summary judgment to be premature as to those claims.

---

[6]Both parties' exhibits make electronic review more difficult than necessary. Defendant's 15 exhibits are identified in the electronic docket only by letter, without any description. Defendant's page citations add to the confusion, with citations to the administrative transcript rather than to pages of the exhibits filed in this Court. Even more challenging, Plaintiff's 47 exhibits are each labeled "exhibit" with no identification at all Upon close review, it appears that some of Plaintiff's exhibits are duplicates of Defendant's exhibits, some are duplicates of themselves, (see Doc. 70-11, 70-12, 70-31, 70-32), and some lettered exhibits are absent entirely (i.e., there are no Exhibits L, Y, or FF).

By contrast, all discovery is complete on Plaintiff's claim that Defendant inadequately investigated an "assault" against Plaintiff. The parties' existing memoranda require no supplementation on that discrete claim. Having fully reviewed all relevant evidence that concerns the "assault," the Court concludes summary judgment should be granted as to that claim.

## II. Standard of Review

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen–Bradley Co.*, 801 F.2d

6

859, 863 (6th Cir. 1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505 (1986). The non-moving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251–52, 106 S.Ct. 2505. To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (citation omitted).

### III.  Findings of Fact[7]

Plaintiff began working at the Postal Service as a Mail Handler Assistant at the Cincinnati, Ohio Network Distribution Center on November 2, 2013. She had several temporary appointments including as a Postal Support Employee and Mail Processing Clerk before being converted to a career Mail Processing Clerk in December 2016.

On January 5, 2018, Plaintiff reported an alleged assault by a co-worker, Adaria Bowman. Defendant states that based upon Plaintiff's report on the day of the incident, Manager Jeffrey Knauer placed Ms. Bowman on Emergency Placement pending investigation and she was removed from the premises. (Doc. 69-6 at 16; *but see* 69-5 at 34). The Postal Inspection Service was called to investigate the incident, and interviewed

---

[7]Because discovery remains incomplete on the failure-to-promote and discipline claims, the Findings of Fact are limited to those relevant to the "assault" claim.

Carla Blevins, identified by Plaintiff as a witness. Ms. Blevins reported that she witnessed contact, but "it was not a big deal." (Doc. 69-6 at 17).

Later in her shift that day, Plaintiff reported a pain in her chest to Supervisor Tina Hill, who transported Plaintiff to the hospital. (*Id*.) While at the hospital, Plaintiff was interviewed by the Cincinnati Police Department, who subsequently advised the Postal Inspection Services that no charges would be filed. (*Id*.) Plaintiff was released from the hospital with a prescription for Advil but no other restrictions. Plaintiff asserts that she sought follow-up care and was not able to return to work due to injuries suffered in the alleged "assault." However, on June 19, 2019, her OWCP/workers' compensation claim was denied. Her appeal of the denial of that claim was also denied. (*Id.* at 19-20).

Plaintiff raised the issue of the alleged assault during the evidentiary hearing held in June 2018 on her 2016 EEO complaint. (Doc. 69-3). At the hearing, Defendant presented evidence that reflected that incident involved relatively minor and accidental physical contact between two female co-workers when Ms. Bowman was walking out of the break room and Plaintiff was walking into the room. (Doc. 69-3 at 3-5).[8] The administrative judge noted evidence of "an intense animosity between [Plaintiff's] group of friends" and a specific supervisor, "as well as Ms. Brown [sic] who bumped into [Plaintiff]…" However, the judge rejected Plaintiff's assertion that the incident was anything more than an isolated incident, or part of a "hostile work environment," based upon Plaintiff's failure to establish elements of a prima facie case. (Doc. 69-4 at 31),

After review, the EEO administrative judge presiding over the 2016 EEO proceedings rejected Plaintiff's "assault" claim.

---

[8]Defendant's "Statement of Undisputed Material Facts" purports to quote from Plaintiff's hearing testimony in a manner that strongly supports other evidence presented about the minor nature of the incident. (Doc. 69 at ¶57). However, the referenced quotation does not appear at the page cited by Defendant in Exhibit C, (Doc,. 69-3).

8

> I…have a problem with the [Plaintiff] …in terms of staying off work for several months simply because she bumped into someone. There is no evidence that that was because of hostile work environment or intimidation. Both bumped into each other. No credible evidence was presented to show who actually bumped first, both collided.
>
> The Complainant could have stayed away, once she saw Ms. Brown [sic] coming toward her, but she did not. That's why people bump into each other. There is no evidence that the Complainant stayed away and Ms. Brown [sic] followed her and walked into her. No such evidence exists.

(Doc. 69-4 at 33-34; *see also* Doc. 69-3 at 4-5; Doc. 70-3 at 34-35). The EEO judge rejected all claims presented at the June 2018 hearing, concluding that there was "no retaliation and no hostile work environment, as well as [no] sexual harassment." (Doc 69-4 at 36).

### IV. Analysis

#### A. Judicial Review is Foreclosed on the Assault Claim

As stated, the same "assault" claim was addressed at the hearing on Plaintiff's 2016 EEO complaint. In his June 27, 2018 decision, the EEO administrative judge made findings adverse to Plaintiff on this claim. Plaintiff was notified of her right to appeal but did not. (Doc. 69-25, October 16, 2018 EEO Order Entering Judgment). Therefore, the claim arguably is not subject to further review in this Court. Although the 2018 EEO Report initially accepted the same "assault" claim for review, the 2018 EEO complaint was filed prior to the hearing and decision issued on the 2016 EEO claims, and it is unclear from the record whether the administrative judge presiding over the 2018 EEO proceeding was aware of the duplication. Given the prior adjudication of the "assault" claim in the unappealed June 27, 2018 decision, the undersigned finds the claim to be foreclosed from further consideration on the merits in this Court.

In the absence of any allegation of discrimination based upon a protected class or prior EEO activity, this Court also will not review Plaintiff's claim that she was unable to

9

return to work due to work-related injuries stemming from the January 2018 incident. In other words, Plaintiff may not relitigate her workers' compensation claim in this federal employment discrimination case.

### B. The Assault and Investigation are not Adverse Actions

Alternatively, the Court concludes as a matter of law Defendant did not discriminate or retaliate against Plaintiff concerning the alleged "assault" or its investigation thereof. Plaintiff's case is governed by the familiar *McDonnell Douglas* burden-shifting framework that applies to most employment discrimination cases. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973). In order to prove a prima facie case of discrimination under that framework, a plaintiff must show that: (1) she is a member of a protected class, (2) she was qualified for her position; (3) she was subjected to an adverse employment action, and (4) she was treated differently than a similarly situated nonprotected person. *Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013) (citing *McDonnell*, 411 U.S. at 802). In order to establish a retaliation claim, a plaintiff similarly must show that: (1) she engaged in activity protected by Title VII; (2) the protected activity was known to the defendant; (3) the defendant subjected plaintiff to an adverse employment action; and (4) a causal connection exists between the protected activity and the materially adverse action. *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir. 2000). Here, Plaintiff has presented <u>no</u> evidence that the "assault" was motivated by Plaintiff's membership in any protected class or prior EEO activity, or that Defendant's investigation of the incident was motivated by Plaintiff's race, color, national origin, sex, or her prior EEO activity.

In addition, based on the record presented, the "assault" is not an adverse employment action. An "adverse action" by an employer generally requires a showing of

some material change in the terms of employment, such as termination, a demotion that includes a decrease in pay, or other material loss of benefits or responsibilities. See *Jackson v. City of Columbus*, 194 F.3d 737, 752 (6th Cir. 1999) (abrogated on other grounds by *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)). Plaintiff does not allege that her employer somehow directed the collision with her coworker or could have anticipated the incident, which cannot be equated to a loss in pay or demotion. In fact, Plaintiff has not even alleged that her coworker was motivated by some impermissible bias, as opposed to mere inattention. In short, the alleged "assault" is not a materially adverse action by the Defendant.

The Defendant's allegedly inadequate investigation of the incident also fails to rise to the level of an adverse employment action. The record reflects that the Postal Service determined that Ms. Bowman accidentally collided with Plaintiff as Plaintiff was walking into the break room and the other employee was walking out of the room, and that there was no intentional "assault." At Plaintiff's request, she was taken to the hospital by her supervisor on the date of the incident. (Doc. 69-6 at 16). The Postal Service Inspection Service was called and found no wrongdoing in the incident. (*Id.* at 16-17). Again, Plaintiff fails to even allege (much less offer any evidence) that the investigation was influenced by impermissible bias. Even if she had included such allegations, the Sixth Circuit has held that an internal investigation in which a plaintiff does not experience a loss of pay, disciplinary action or demotion does not constitute an "adverse action." See *Kuhn*, 709 F.3d at 626.

Plaintiff does allege that she suffered injuries from the incident that caused her to be unable to return to work for more than a year. However, that alleged loss in pay was not caused by the Defendant's investigation of the alleged "assault" or from any

11

actionable adverse action by the Defendant. Thus, Defendant is entitled to judgment as a matter of law on this claim.[9]

### V. Conclusion and Order

For the reasons stated herein, **IT IS ORDERED**:

1. Defendant's motion for summary judgment (Doc. 69) is **GRANTED IN PART** as to Plaintiff's January 2018 "assault" claim, with leave to file a new motion on remaining claims after completion of the period of reopened discovery, on or before **May 30, 2021**;

2. Future exhibits filed by either party in this case must be identified in the electronic case management record by a descriptive word or phrase that consists of more than the word "exhibit" or alphanumeric letter. For clarity, citations to pages within exhibits should be to the record of this Court.

<u>s/Stephanie K. Bowman</u>
Stephanie K. Bowman
United States Magistrate Judge

---

[9] Many (if not all) of the disciplinary actions about which Plaintiff complains stem from her prolonged absence from work following the January 5, 2018 incident. At least some of the complained-of discipline appears to have been expunged through the grievance process. Until discovery is complete, the Court need not reach the issue of whether the disciplinary actions are separate adverse actions motivated by Plaintiff's protected classification(s) or prior EEO activity. *But see Tolbert v. Potter*, 2005 WL 1348986 (E.D. Mich. June 2, 2005) (holding that disciplinary warning letter that was later expunged pursuant to a union grievance was not a materially adverse employment action).